**RABINOWITZ, LUBETKIN & TULLY, L.L.C.**
293 Eisenhower Parkway, Suite 100
Livingston, New Jersey 07039
(973) 597-9100
Jonathan I. Rabinowitz (JR9356)
*Counsel for Plaintiff, Thomas F. Kane, Sr.*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| THOMAS F. KANE, SR., <br><br> Plaintiff, <br><br> vs. <br><br> THE MANUFACTURERS LIFE INSURANCE COMPANY, <br><br> Defendant. | Civil Action No. 08-4581 |

## AMENDED COMPLAINT FOR (i) DECLARATORY JUDGMENT AND (ii) DAMAGES AND DEMAND FOR JURY TRIAL

Plaintiff, Thomas F. Kane, Sr. ("Kane"), by way of Amended Complaint against Defendant, The Manufacturers Life Insurance Company ("Manulife"), alleges as follows:

### NATURE OF ACTION

1. This action seeks a judicial determination pursuant to N.J.S.A. 2A:16-52 that Manulife's security interest (the "Security Interest") in Kane's limited partnership interest in Adare Partners, L.P. ("Adare") is extinguished because the obligation secured by the Security Interest has been released or satisfied.

### THE PARTIES AND RELATED ENTITIES

2. Kane is an individual who has resided in the State of Florida since 1996. Prior to 1996, Kane resided in the State of New Jersey.

3. Thomas Kane, Jr. ("Kane, Jr.") is the son of Kane and was a general partner of the former Printon Kane Holdings LP ("PKHLP").

4. Manulife is an insurance company organized under the laws of Canada, which for all times relevant hereto transacted business in the State of New Jersey.

5. Adare is a Delaware Limited Partnership that owns Adare Manor Resort in Limerick, Ireland. Kane is a 15.4% limited partner of Adare and a 50% shareholder and President of Thomas F. Kane, Inc. ("TFKI"), the corporate general partner of Adare.

5. Printon Kane Government Securities, L.P. ("Printon Kane"), was a Delaware Limited Liability Partnership formed in October 1985 and was also known as PKHLP. On December 27, 1995, Printon Kane was liquidated and its affairs were restructured and settled (the "1995 Settlement").

## RELEVANT FACTS

7. Manulife entered into a business relationship with Printon Kane in the early 1980's.

8. Upon information and belief, over the course of the parties' relationship, Manulife invested significant amounts of money in Printon Kane.

9. Kane executed a promissory noted dated January 31, 1989, in the principal amount of $208,350 in favor of PKHLP (the "Kane PK85 Note").

10. Kane was indebted to PKHLP in the amount of $214,055 on account of certain advances made to PK Investors Partnership-1985 by PKHLP (the "Kane Receivable").

11. Kane executed in favor of PKHLP a promissory note dated January 31, 1989, in the principal amount of $2,608,856 (the "Debit Balance Note").

12. Kane executed in favor of PKHLP a promissory noted dated March 31, 1992, in the principal amount of $395,000 (the "Adare Note") (The Kane PK85 Note, the Kane Receivable, the Debit Balance Note, and the Adare Note, collectively, the "Prior Notes".)

13. PKHLP assigned all of its rights with regard to the Prior Notes to Manulife.

2

## A. The 1995 Settlement

14. The 1995 Settlement resulted from two (2) actions (the "Actions") commenced by former employees against Printon Kane in the Superior Court of New Jersey, Chancery Division captioned: <u>Robert F. Grimmig et al. v. Printon Kane Government Securities, Limited Partnership, et al.</u>, Docket No. C-66-92 (the "Grimmig Action") and <u>Joseph F. Mannello, et al, v. Printon Kane Group, Inc., et al</u>, Docket No. C-347-92 (the "Mannello Action"). During the pendency of the the Actions, Chancery Court Judge Margolis appointed Frank Cozzarelli ("Cozzarelli") as fiscal agent to settle the Actions. Cozzarelli settled the Actions and as a part of such settlement effected an orderly liquidation of Printon Kane and restructured its affairs.

15. The 1995 Settlement was memorialized by stipulations of settlement (the "Stipulations of Settlement") filed with the Court on March 16, 1995. The Stipulations of Settlement incorporated a memorandum of understanding dated February 8, 1995 (the "MOU"), pursuant to which all claims against or relating to Printon Kane and related entities, including Manulife, were settled.

16. Manulife was a signatory to the MOU.

17. Stipulations of Dismissal were filed with the Court on May 17, 1995 in the Grimmig Action and in the Mannello Action on August 3, 1995. The Stipulations of Settlement, the MOU, and the Stipulations of Dismissal retained jurisdiction in the New Jersey Chancery Court over the 1995 Settlement and to enforce same.

18. Inasmuch as any alleged claim by Manulife against Kane arises from the 1995 Settlement, the New Jersey Chancery Court has retained and continues to exercise jurisdiction over this Action.

19. In connection with the 1995 Settlement, Kane executed in favor of Manulife certain amended and restated promissory notes (the "Amended Notes") as follows, which were intended to and, in fact, did supercede the Prior Notes:

3

   a. Amended note A in the principal amount of $584,307 which amends, restates, consolidates, and supercedes the indebtedness represented by the Kane PK-85 Note ("Amended Note A");

   b. amended note B in the principal amount of $4,432,398 which amends, restates, and supercedes the indebtedness represented by the Debit Balance Note ("Amended Note "B"); and

   c. amended note C in the principal amount of $547,075 which amends, restates, and supercedes the indebtedness represented by the Adare Note ("Amended Note C").

20.  In or about December 27, 1995, Kane executed an agreement pledging all of his interest in Printon Kane Liquidating Company I, LLC ("PKLCI")[1] and all of his limited partnership interest in Adare to Manulife to secure his obligations under the Amended Notes (the "Pledge Agreements"). The Amended Notes were non-recourse except as to the pledged collateral.

21.  The Amended Notes matured as follows:

   a. Amended Note A - December 1, 2005;

   b. Amended Note B - December 1, 2005; and

   c. Amended Note C - December 31, 1998.

22.  Upon information and belief, the Pledge Agreements and the Amended Notes were assigned by Manulife to Gerlach & Co. ("Gerlach"), its assignee.

23.  The Amended Note C was in default on December 31, 1998, upon its maturity and Kane's failure to pay the outstanding balance, thereby triggering a default under the Pledge Agreements which triggered a default under the Amended Notes A and B on December 31, 1998.

24.  In addition, upon information and belief, Manulife gave notice of such default.

25.  Paragraphs 6 and 7 of the Adare Pledge Agreement require Kane to provide Manulife with certain financial information on a periodic basis.

---

[1] PK-85 Partnership merged into PKLC I and Kane received an interest in PKLC I on account of his interest in PK-85 Partnership.

4

26. If this Court determines that Kane failed to provide Manulife with such financial information, then for this additional reason, the Amended Notes would have been in default as early as 1996.

27. In or about March 2006, Manulife and Gerlach made demand for payment against Kane on the Amended Notes and eventually commenced an action against Kane, Adare, and TFKI in the Delaware Chancery Court (the "Delaware Action") alleging that Kane failed to pay the alleged balance due on the Amended Notes issued in connection with the 1995 Settlement and seeking authority to foreclose the Security Interest.

28. Kane has been dismissed as a defendant in the Delaware Action for lack of personal jurisdiction.

29. Beaudry I Investors, a California Limited Partnership, was formed for the purposes of acquiring, owning and operating a 28 story office building located at 333 South Beaudry Avenue, Los Angeles, California known as the Security Pacific Beaudry Center I (the "Beaudry Building").

30. The Beaudry I Investors Limited Partnership Agreement has been amended from time to time.

31. For all periods of time relevant hereto, PK Investors Partnership – 1985 was a partner of Beaudry I Investors.

32. For all periods of time relevant hereto, Kane was a partner of PK Investors Partnership – 1985.

33. Beaudry I Investors, in fact, acquired, owned and operated the Beaudry Building.

34. In or about December 28, 1995, as part of the liquidation of Printon Kane, PK Investors Partnership – 1985 was merged into PKLCI.

35. Kane was a member of PKLCI.

36. Manulife, for all periods of time relevant hereto, was the managing member of PKLCI.

5

37. In or about January 31, 1989 and May 5, 1992, Kane pledged his interest in PK Investors Partnership – 1985 to secure his obligations under the Prior Notes which preceded the Amended Notes.

38. In or about December 27, 1995, again as part of the liquidation of Printon Kane, Kane reaffirmed his prior pledge of his interest in PK Investors Partnership – 1985 to MLI to secure the Amended Notes and at that same time, pledged his interest in PKLCI to secure his obligations under the Amended Notes.

### B. Sale of the Beaudry Building

39. In or about October 31, 2001, Manulife caused the Beaudry Building to be sold for substantially less than fair market value.

40. The cash portion of the sale price was approximately $74,000,000. Of those proceeds, approximately $16,000,000 was applied against the balance of various promissory notes including, without limitation, the Amended Notes.

41. In attempting to sell the Beaudry Building, Manulife concluded that Kane, Jr.'s assistance was an essential and necessary part of such sale. In December 2000, Kane, Jr. proffered his assistance, which was material to the consummation of the sale, on the condition that Kane's obligations on the Amended Notes to the extent not satisfied from the proceeds of the sale of the Beaudry Building would be released and/or forgiven.

42. On July 27, 2001, Manulife retained Kane, Jr. pursuant to a written fee agreement and agreed to and did pay him $325,000 for his services.

43. For the purposes of the sale of the Beaudry Building and arrangements for the satisfaction and/or release of the Amended Notes, Kane, Jr. was Manulife's agent and had actual authority to bind Manulife.

44. In addition, for these purposes, Manulife held Kane, Jr. out as its agent.

45. The prospective purchaser of the Beaudry Building was the Los Angeles Unified School District run by Roy Romer ("Romer"), the former governor of Colorado. Kane,

6

who had a close relationship with Romer, and Norman Brownstein, a partner at the law firm of Brownstein, Hyatt & Farber,[2] utilized those relationships to facilitate the transaction.

46. Kane would not have done so unless he understood that he was being released by Manulife on any deficiency on the Amended Notes.

47. Kane, Jr. actively participated in the sale process. It was contemplated by all parties that the proceeds of sale would be applied to the outstanding obligations, including, without limitation, the Amended Notes, which are the subject of this Action.

48. Although a purchase price in an amount sufficient to satisfy the Amended Notes in full was contemplated, the purchase price eventually was reduced to approximately $74,000,000, an amount that the parties knew would be insufficient to satisfy in full the principal balance and accrued interest on all obligations including the Amended Notes.

49. Thus, Kane, Jr. engaged in communications with Ray Britt ("Britt"), who was the representative of Manulife working with him on the sale of the Beaudry Building, to ensure that at the lower purchase price, any deficiency Kane owed on the Amended Notes would be forgiven or deemed satisfied.

50. After ongoing and extensive communications, the sale transaction was consummated. At no time did Manulife ever disagree with Kane, Jr.'s analysis that there would be a forgiveness of indebtedness on the Amended Notes. In fact, Manulife proceeded with consummation of the sale.

---

[2] Brownstein, Hyatt & Farber represented Beaudry I Investors, L.P., in the sale of the Building. Another partner in this law firm, Cole Finegan, was formerly Roy Romer's personal attorney while he was governor.

7

51. Kane, Jr. relied upon Manulife's expressed agreement that any deficiency on the Amended Notes would be forgiven. In addition, Kane, Jr. communicated these issues to Kane who also relied upon this agreement. While Kane recognized that the sale proceeds were insufficient at a $74,000,000 purchase price to satisfy principal and interest on obligations including the Amended Notes, he was prepared to move forward and in fact, did move forward, because of Manulife's willingness to forgive any deficiency amounts on the Amended Notes.

## C. Manulife's Post-Closing Conduct

52. Importantly, Manulife's post-closing conduct also supports Kane's understanding of the agreement with Manulife to forgive any deficiency on the Amended Notes. Specifically,

- Both PKLC I and Manulife are accrual basis accounting reporters. One of the substantial obligations as reflected on PKLC I's books and records was an obligation associated with the Beaudry Building known as the PK-85 Note in the principal amount of $2,607,266. This note was to have been adjusted as of the 1995 restructure to include accrued interest through that date, increasing the principal balance to $3,985,729. In addition, since the restructure, additional interest accrued on this note, bringing the total balance as of 2001 to $6,132,538. Notwithstanding the foregoing, the books and records of PKLC I did not reflect the accrued interest but only the principal balance of this note. Also, certain other member notes and the Amended Notes were carried on Manulife's books and records at the principal balance outstanding as of the 1995 restructure. **These notes accrued interest. However, from 1995 to 2000, the books and records of Manulife and PKLC I did not reflect the accrual of interest on these notes. This conduct evidences Manulife's intent to waive the interest on these notes including the Amended Notes. Because of the waiver of interest, the proceeds from the sale of the Beaudry Building were substantially sufficient to satisfy the Amended Notes.**

- In 2001, the proceeds of the Beaudry Building were received and applied. The terms of the relevant notes and the PKLC I operating agreement expressly required that the proceeds be applied first to accrued interest and then to the principal balance. The principal balance was $16,188,931, and the accrued interest was $9,462,219. The proceeds received were $16,000,000. Had the proceeds been applied to interest first, as required, with respect to the other member notes and the Amended Notes, Manulife would have had an obligation to issue a tax reporting form known as a 1098 to the other members and to Kane, reflecting interest paid. In fact, no such 1098 was ever issued. **This indicates that Manulife applied the proceeds only to the principal because it had written off the interest. The proceeds were sufficient to satisfy substantially all of the principal balance. Thus, no balance remains on the Amended Notes.**

8

- Kane, Jr. had several communications with Britt, who was the primary representative of Manulife in these transactions, and it was his understanding that Kane's liability on the Amended Notes would be limited to any distributions and capital transactions that occurred within the term of the Amended Notes provided there was no distribution or capital transactions as defined in paragraph two of the Adare Pledge Agreement. No capital transaction occurred within the term. Although, there were nominal distributions during the term, it was Britt's understanding that Kane's liability on the Amended Notes was limited to the nominal distributions.

- Finally, as further evidence that Manulife wrote off the balance of the Amended Notes, the UCC-1 Financing Statement Manulife filed as part of the 1995 Settlement, reflected Kane's pledge of his limited partnership in Adare to secure the Amended Notes. That UCC-1 Financing Statement was filed on January 12, 1996. Pursuant to Section 9-515 of Article 9, a financing statement is only effective for five years unless renewed. That five year period expired on January 12, 2001. Upon information and belief, a search of public records indicates that Manulife never continued this financing statement beyond January 12, 2001. **Had Manulife not written off the balance of the Amended Notes, it would have continued its financing statement beyond that date to continue perfection of its security interest in Kane's limited partnership interest in Adare. This is particularly so because the Amended Notes were non-recourse. This conduct further evidences that Manulife had written off the balance of the Amended Notes.**

## COUNT I

53. Kane repeats and realleges each of the foregoing allegations set forth in paragraphs 1 through 52 above as if fully set forth at length herein.

54. Based on the foregoing, the balance owed by Kane on the Amended Notes has been released by Manulife.

55. Section 1-201(35) of the Uniform Commercial Code ("UCC") defines a security interest as an interest in personal property securing payment or performance of an obligation.

56. Because the balance of the Amended Notes has been released, there is no obligation.

57. Because there is no obligation, the Security Interest is discharged.

## COUNT II

58. Plaintiff repeats and realleges each and every preceding allegation in paragraphs 1 through 57 as if fully set forth at length herein.

9

59. Recovery on the Amended Note is barred by the expiration of the applicable statute of limitation.

60. Because there is no obligation on the Amended Notes, the Security Interest is discharged pursuant to Section 1-201-(35) of the UCC.

## COUNT III

61. Kane repeats and realleges each of the foregoing allegations set forth in paragraphs 1 through 60 hereof as if full set forth at length herein.

62. Manulife, as managing member of PKLC I was responsible for all aspects of the sale of the Beaudry Building directly and through its agents.

63. In effecting the sale of the Beaudry Building, Manulife did not conduct adequate due diligence including, inter alia, failing to obtain an independent appraisal of the Beaudry Building's fair market value and failing to assign adequate qualified personnel to effect the sale.

## COUNT IV

64. Kane repeats and realleges each and every preceding allegation in paragraphs 1 through 63 hereof as if fully set forth at length herein.

65. As managing member of PKLC I, Manulife owed all of the members, including Kane, a fiduciary duty.

66. At all periods of time relevant hereto, Kane was a member of PKLC I.

67. Manulife, by selling the Beaudry Building for less than fair market value, breached its fiduciary duty to Kane, thereby damaging him in an amount equal to or greater than any damages that Manulife alleges against Kane in the Counterclaim.

68. In failing to conduct adequate due diligence in connection with the sale, Manulife breached its fiduciary duty to Kane thereby damaging him in an amount equal to or greater than the damages alleged by Manulife in the Counterclaim.

## COUNT V

69. Kane repeats and realleges each and every preceding allegation in paragraphs 1 through 68 as if fully set forth at length herein.

70. Pursuant to the Pledge Agreements, Manulife was a secured creditor of Kane.

71. As a secured creditor, Manulife had a duty to Kane to liqudate its collateral in a commercially reasonable fashion.

72. By failing to sell the Beaudry Building for fair market value and for failure to conduct appropriate due diligence in connection with that sale, Manulife has breached its duty as a secured creditor to Kane.

73. As a result, Kane has been damaged in an amount equal to or greater than the damages that Manulife alleges in the Counterclaim.

## COUNT VI

74. Kane repeats and realleges each and every preceding allegation in paragraphs 1 through 73 as if fully set forth at length herein.

75. Manulife had a duty to conduct due diligence in connection with the sale of the Beaudry Building in a commercially reasonable fashion.

76. Manulife negligently breached that duty by (i) failing to obtain an independent appraisal of the fair market value of the Beaudry Building prior to selling it; and (ii) failing to assign appropriate qualified personnel to effect the sale.

77. Manulife's conduct in negligently breaching its duty proximately caused damages to Kane in an amount equal to or greater than the damages that Manulife alleges in the Counterclaim.

## COUNT VII

78. Kane repeats and reallges each and ever preceding allegation in paragraphs 1 through 77 as if fully set forth at length herein.

11

79. The Amended Notes and the Pledge Agreements contained an implied covenant of good faith and fair dealing by Manulife in favor of Kane.

80. In causing the Beaudry Building to be sold for less than fair market value and for failing to conduct adequate due diligence in connection with the sale of the Beaudry Building, Manulife has breached its implied covenant of good faith and fair dealing.

81. In failing to honor its agreement to release Kane on any deficiency on the Amended Notes, Manulife has breached its implied covenant of good faith and fair dealing.

82. Kane has been damaged by Manulife's breach in an amount equal to or greater than the damages that Manulife alleges in the Counterclaim.

## COUNT VIII

83. Kane repeats and realleges each and every preceding allegation in paragraphs 1 through 82 as if fully set forth at length herein.

84. Upon information and belief, Manulife's conduct described in the preceding paragraphs was engaged in by Manulife with the actual intent to harm Kane. In the alternative, Manulife should have known that such conduct would harm Kane.

85. Thus, Kane is entitled to punitive damages, prejudgment interest and attorneys' fees and costs in prosecuting the Complaint and in defending of the Counterclaim.

**WHEREFORE**, by reason of the foregoing, Kane is entitled to an order and judgment against Manulife as follows:

(a) On Counts I and II, declaring that:

  (i) any deficiency amounts due under the Amended Notes was released by Manulife or discharged; and

  (ii) Kane's pledge of security in Adare is extinguished as the underlying obligations having been released or discharged;

(b) On Counts III through VII, awarding Kane compensatory damages;

(c) On Count VIII, awarding Kane punitive damages;

(d) For Kane's costs and disbursements in this action, including reasonable attorneys' fees;

(e) Awarding Kane pre-judgment interest on all Counts; and

(f) For such other and further relief as the Court may deem just and equitable.

**RABINOWITZ, LUBETKIN & TULLY, L.L.C.**
Counsel for Plaintiff, Thomas F. Kane, Sr.

By: _____
JONATHAN I. RABINOWITZ

Dated: November 24, 2009

13

## CERTIFICATION UNDER RULE 4:5-1

**JONATHAN I. RABINOWITZ**, attorney for Plaintiff, Thomas F. Kane, Sr., hereby certifies that to the best of his knowledge, information, and belief, the matter in controversy is not subject to any other action pending in any court or of a pending arbitration proceeding except for an action pending in the Chancery Court of Delaware by Defendant against Adare LP and Thomas F. Kane, Inc. I further certify that no other action or arbitration proceeding is contemplated and that I am not aware of any other person or entity who should be joined in this action except that Defendant seeks to join Judy Kane.

_____
JONATHAN I. RABINOWITZ

Dated: November 24, 2009

## DESIGNATION OF TRIAL COUNSEL

**JONATHAN I. RABINOWITZ** is hereby designated as trial counsel for Plaintiff.

_____
JONATHAN I. RABINOWITZ

Dated: November 24, 2009

## JURY DEMAND

Plaintiff hereby demands a jury trial on all Counts of the Amended Complaint.

_____
JONATHAN I. RABINOWITZ

Dated: November 24, 2009

F:\Client_Files\A-M\KANE\NJ Action\Amended Complaint.doc

14